IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
|  | ) | |
|  | ) | Case No. 3:22-CV-50167 |
| v. | ) | |
|  | ) | |
| THE ILLINOIS DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | Judge _____ |
|  | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff United States of America, by and through the undersigned attorneys, alleges:

1. The Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, *et seq*. ("USERRA") requires employers to reemploy returning servicemembers in their "escalator" position—the position they were reasonably certain to have attained but for their military service.

2. The Illinois Department of Corrections ("IDOC") violated its obligations under USERRA when it failed to reemploy Roderick Workman ("Workman") as a Corrections Transportation Officer I ("CTO I").

3. It is reasonably certain that Workman would have attained the CTO I position, but for his military service, given IDOC's practice of selecting the bidder with seniority for vacancies, IDOC's concession that Workman had the necessary seniority and it would have selected him on that basis had he bid for the CTO I position, which IDOC posted

while he was away on military service, and Workman's attempts to bid for his escalator position before and after military service.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(1).

5. IDOC operates 25 adult correctional centers, boot camps, work camps, and adult transition centers in Illinois. IDOC's Dixon Correctional Center ("DCC") is located at 2600 North Brinton Avenue, Dixon, Illinois 61021, which is located within this Court's jurisdiction.

6. Venue is proper in this district under 38 U.S.C. § 4323(c)(1) because IDOC is located in and does business in this judicial district; and is considered a "State" as defined in 38 U.S.C. § 4303(14). Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district.

## DEFENDANT

7. IDOC is an employer within the meaning of 38 U.S.C. § 4303(4)(A), and is subject to suit under USERRA under 38 U.S.C. § 4323(a).

## FACTUAL ALLEGATIONS

### WORKMAN'S MILITARY SERVICE AND IDOC CAREER

8. Workman has been a member of the Illinois Air National Guard since 1991. He is currently a Technical Sergeant and, while on duty, worked as a Structural Craftsman. During his military service, Workman has been stationed in Iraq; Guantanamo Bay, Cuba; Al Dhafra, the United Arab Emirates; and Japan.

9. Workman began his career as a Correctional Officer ("CO") at IDOC's DCC on November 9, 1998. As a CO at DCC, Workman earned approximately $4,036 per month.

10. During his time at DCC, Workman served on the transportation team from June 2016 to July 2018, where he transported inmates to and from court (a transport duty known as performing writs) and medical appointments (a transport duty known as performing furloughs).

## IDOC'S BIDDING PROCESS

11. When vacancies arise at DCC or anywhere within IDOC, members of the RC-6 bargaining unit, which covers COs, have to follow specific steps to submit a bid.

12. First, applicants must fill out a bid vacancy form, disclosing whether they have a current promotional grade for the position or whether they have submitted a CMS-100B Promotional Application ("CMS-100B") to the Department of Central Management Service ("CMS") for a grade.

13. To get a grade, applicants must submit a CMS-100B to CMS, detailing their employment history and qualifications. Employees can submit a CMS-100B for grading even if there is no vacancy for a specific position.

14. After CMS receives an employee's CMS-100B, it assigns a "grade." An "A" grade means a candidate is well qualified for a particular position. These grades are valid for six years.

15. If a candidate already has a grade from CMS, the candidate would indicate that on the bid vacancy form. After receiving all bids and grades from CMS, DCC awards positions in the RC-6 bargaining unit based on seniority.

3

## WORKMAN'S INTEREST IN THE CTO I POSITION

16. For years, Workman has expressed interest in the CTO I position.

17. A CTO I's primary responsibility is to drive inmates on buses between correctional facilities, court, and health appointments. Workman performed many of these duties when he served on the transportation team executing writs and furloughs. CTO I's are also required to have a minimum of one-year experience as a CO and possess a class B with endorsement L commercial driver's license and a class B with endorsement P driver's license. Workman had all of these qualifications.

18. Workman proactively submitted a CMS-100B for both a CTO I and CTO II position in 2010 before DCC had a CTO I vacancy. Workman believed that a CTO I position would open up at DCC because IDOC had recently purchased transportation buses for the facility that would likely need drivers.

19. In or about 2010, Workman submitted a CMS-100B for the CTO I position and received an "A" Grade.

20. In 2014, IDOC created a CTO I position at DCC. Although Workman's "A" grade from his 2010 CMS-100B was still active, he did not bid on the CTO I position because he was junior to another corrections officer, Donnie Rogers ("Rogers"), who he knew had bid on and had seniority for the position. DCC selected Rogers as its first CTO I.

21. In 2019, Workman submitted another CMS-100B for the CTO I position after learning that Rogers planned to retire. His application again received an "A" grade.

## WORKMAN'S APRIL TO NOVEMBER 2019 ACTIVE MILITARY DUTY

22. Around January 2019, Workman received military orders to report for active duty from April 3, 2019 to November 19, 2019.

23. On or around January 15, 2019, Workman verbally informed Kathy Newstrand ("Newstrand"), DCC's human resources representative, that he would be on active military duty and provided her with a copy of his military orders.

24. At that time, Workman also attempted to bid for Rogers's soon-to-be-vacant CTO I position. Newstrand denied his request to apply because IDOC had not posted the position. Newstrand told Workman that IDOC would wait for him to return from military service before posting the vacancy, and that if IDOC posted the position before his return, she would inform him via email.

25. In January 2019, IDOC was aware that Workman was interested in the soon-to-be vacant CTO I position at DCC.

26. Workman left for military service on April 3, 2019, where he was stationed in Al Dhafra in Abu Dhabi, United Arab Emirates.

## THE 2019 CTO I VACANCY

27. IDOC posted the CTO I position before Workman returned from military service, and it did not inform him of the vacancy.

28. On September 5, 2019, while Workman was away on military service, IDOC posted a job announcement for the CTO I position. IDOC accepted bids through September 18, 2019.

29. On September 13, 2019, Corrections Officer John Thomas ("Thomas") bid on the CTO I vacancy. Thomas, like Workman, had submitted a CMS-100B for the CTO I position and received an "A" grade. Workman, however, had more seniority than Thomas.

30. On November 1, 2019, IDOC selected Thomas for the CTO I position because he was the sole bidder.

31. When Newstrand offered Thomas the CTO I promotion, Thomas questioned whether Workman had turned down the position because he knew of Workman's interest, qualifications, and seniority.

32. Newstrand responded that Thomas was the highest seniority person who bid for the position and asked him whether he would accept the promotion.

33. After Thomas accepted the promotion, his colleagues at DCC chastised him for "stealing" a servicemember's promotion, indicating that Workman's interest in the position was well known.

34. On November 19, 2019, Workman was honorably discharged from active duty with the Illinois Air National Guard.

35. On December 4, 2019, Workman returned to work and learned that IDOC had filled the CTO I position.

36. Workman attempted to file a complaint with the union about IDOC's failure to reemploy him as a CTO I, but the union refused to grieve his complaint under the collective bargaining agreement. The grievance did not involve a USERRA claim.

THE CTO I POSITION WAS WORKMAN'S ESCALATOR POSITION

37. The CTO I position is a promotion from CO because it is in a higher pay grade than the CO position. As a CO, Workman earns approximately $48,432 per year. The CTO I position pays up to $70,404 per year.

38. Since Workman's return from active duty in December 2019, IDOC has failed to reemploy him as a CTO I.

39. Had Workman bid on the CTO I position in 2019, he would have attained the promotion because he was well qualified for the position and had more seniority than Thomas.

40. In July 2021, Workman transferred to the Kewanee Life Skills Re-Entry Center, where he continues to work as a CO.

## CLAIM FOR RELIEF
## (Violation of USERRA)

41. Workman repeats the factual allegations set forth in paragraphs 7-40.

42. USERRA requires employers to promptly reemploy servicemembers on leave for military service for more than ninety days "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A).

43. "[A]n employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service." 20 CFR § 1002.191.

44. IDOC violated 38 U.S.C. § 4313 when it failed to reemploy Workman as a CTO I, which is the position Workman would have attained with reasonable certainty if not for his absence due to uniformed service.

45. IDOC's actions have harmed Workman. Workman is due back wages for the difference between his pay as a CO and what he would have earned as a CTO I since returning from military duty in December 2019.

46. Servicemembers on active military duty are not required to bid for promotions with their civilian employers.

47. All conditions precedent to the filing of this suit have been performed or have occurred.

## PRAYER FOR RELIEF

48. The United States prays that the Court enter judgment against IDOC and grant the following relief:

   a) declare that the IDOC's failure to reemploy Workman as a CTO I violated USERRA; and

   b) order IDOC to comply with USERRA by:

   1) awarding Workman the amount of lost wages and benefits resulting from its failure to reemploy him as a CTO I in December 2019;

   2) awarding Workman prejudgment interest on the amount of lost wages and benefits found due; and

   3) awarding such additional relief as justice may require, together with the costs and disbursements in this action.

                                                              Respectfully submitted,

                                            KRISTEN CLARKE
                                            Assistant Attorney General
                                            Civil Rights Division

                                            KAREN D. WOODARD
                                            Chief
                                            Employment Litigation Section

                                            JOHN BUCHKO (DC Bar #452745)
                                            Deputy Chief

By:

                                            */s/ Dena Elizabeth Robinson*
                                            DENA E. ROBINSON, DC Bar #252881
                                            HILLARY K. VALDERRAMA, TX Bar #24075201
                                            *Trial Attorneys*
                                            U.S. Department of Justice
                                            Civil Rights Division
                                            Employment Litigation Section
                                            150 M Street, N.E., Room Number 9.1130
                                            Washington, DC 20530
                                            Phone: (202) 598-1578 (Robinson) / (202) 616-5546 (Valderrama)
                                            Facsimile: (202) 514-1005
                                            dena.robinson@usdoj.gov
                                            hillary.valderrama@usdoj.gov

                                            *Counsel for Plaintiff the United States*

                                            Dated:  May 23, 2022